UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SHEILA H., <br><br> Plaintiff, <br><br> v. <br><br> FRANK BISIGNANO, <br><br> Defendant. | No. 23 CV 2114 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Plaintiff Sheila H. appeals the Commissioner of Social Security's decision denying her application for benefits. For the following reasons, plaintiff's motion to reverse or remand the Commissioner's decision [18] is denied, the Commissioner's motion for summary judgment [25] is granted, and the denial of benefits is affirmed.[1]

### Background

In January 2020, plaintiff applied for a period of disability and disability insurance benefits, alleging an onset date of March 27, 2017. [13-1] 15. The claim was denied initially, on reconsideration, and after a hearing before an administrative law judge. [*Id.*] 15-28. The Appeals Council denied review in February, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claim in accordance with the Social Security Administration's five-step evaluation process. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date and through the date last insured (DLI). [13-1] 18. At step two, the ALJ determined that plaintiff has the following severe impairments: osteoarthritis, obesity, history of thyroid cancer, cataract, GERD, apnea, and hypertension. [*Id.*]. At step three, the

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [13], which refer to the page numbers in the bottom right corner of each page.

[2] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge [8, 9].

ALJ concluded that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 18-21. Before turning to step four, the ALJ ruled that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that plaintiff could (1) lift and carry less than 20 pounds occasionally and up to 10 pounds frequently, (2) stand and walk up to two hours during an eight-hour workday, (4) sit for up to six hours in an eight-hour work day, (5) frequently stoop, and (6) occasionally climb, balance, kneel, crouch, and crawl. [*Id.*] 21-27. At step four, the ALJ held that plaintiff could perform her past relevant work as an enrollment specialist/benefits clerk II. [*Id.*] 27. Because that ruling meant that plaintiff was not disabled, the ALJ denied the application without addressing step five.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

## Discussion

Plaintiff, who was not represented by counsel at the administrative level, argues that the denial of benefits should be reversed because the ALJ violated his duty to scrupulously develop the record on her behalf. More specifically, plaintiff claims that the ALJ needed to further develop the record relating to (1) plaintiff's past relevant work, (2) her recent work efforts, (3) the side effects caused by one of her medications, and (4) "sitting and breaks and effects of activities, vocational cross-examination, etc." [18] 8-15. Finally, plaintiff contends that the ALJ did not "fully advise [her] as to rights in general, including related to date-last-insured." [*Id.*] 12, 14.

"An ALJ in a benefits hearing has a duty to develop a full and fair record." *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023). "[T]his duty is enhanced when a disability benefits claimant is unrepresented[.]" *Rennaker v. Saul*, 820 F. App'x 474, 479 (7th Cir. 2020). "Where the disability benefits claimant is unassisted by counsel, the ALJ has a duty scrupulously and conscientiously to probe into, inquire of and explore for all of the relevant facts." *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994) (internal quotation marks and brackets omitted). "Although pro se litigants must furnish some medical evidence to support their claim, the ALJ

2

is required to supplement the record, as necessary, by asking detailed questions, ordering additional examinations, and contacting treating physicians and medical sources to request additional records and information." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal citations omitted).

"However, even when a claimant is unrepresented, the Commissioner is granted broad discretion in determining how much evidence to gather." *Jeffrey G. v. O'Malley*, No. 23 C 2876, 2024 WL 308333, at *4 (N.D. Ill. Jan. 26, 2024) (internal quotation marks omitted). "[A] significant omission is usually required for a court to find that the ALJ failed to assist a pro se claimant in developing the record," and "an omission is significant only if it is prejudicial." *Ibrahim I. v. Saul*, No. 17-cv-5983, 2020 WL 1820598, at *3 (N.D. Ill. Apr. 10, 2020) (internal quotation marks omitted). Because plaintiff does not dispute that the ALJ obtained a valid waiver of her right to be represented, she has the burden to establish that she was prejudiced by a significant omission in the record. *See Spencer B. v. Bisignano*, No. 22 CV 7131, 2025 WL 1616436, at *2 (N.D. Ill. June 6, 2025). "To prove prejudice, the claimant must point to specific, relevant facts that the ALJ did not consider." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019).

### A. Past Relevant Work

Plaintiff argues that the ALJ "did not actually clarify with Plaintiff how long" she was required to stand and walk during her employment as an enrollment specialist/benefits clerk II. [18] 8. Plaintiff also contends that the ALJ needed to clarify whether the job she held between 2014 and 2016 was a temporary position, given her testimony that "the workload eased up, and then I was a temp." [*Id.*] 9. Plaintiff then faults the ALJ for not exploring whether the enrollment-specialist position was a composite job after plaintiff, in a pre-hearing work history report, described the job by "list[ing] out 16 hours' worth of activities." [*Id.*]. In a related vein, plaintiff maintains that the ALJ should have questioned her about the lifting and carrying requirements of her work as an enrollment specialist, which may have indicated that the work was performed at the medium exertional level. [*Id.*] 10.

None of these arguments has merit. First, plaintiff stated in a pre-hearing work history report that she was required to stand for two hours per day and walk for one hour per day while working as an enrollment specialist (but also explaining that these requirements varied by day). *See* [13-1] 278. Second, while plaintiff described herself as being a "temp" for part of her tenure as an enrollment specialist, the Court does not see why this testimony required the ALJ to clarify the record or how his failure to do so created a significant omission in the record. Plaintiff's brief suggests that plaintiff might have been "confused or mis-speaking," [18] 9, but this is pure speculation. Read in context, plaintiff appeared to be explaining to the ALJ how she came to lose the enrollment specialist job. *See* [13-1] 51 (testifying that her boss allowed her to come into office early or stay late to complete her work, "but then the

3

workload eased up, and then I was a temp, so they let me go"). Finally, plaintiff's work history report clearly indicated the length for which she had held each of her past jobs, so there was nothing for the ALJ to clarify. *See* [*id.*] 278-85.

Nor has plaintiff established that the ALJ significantly erred in failing to explore whether the enrollment-specialist position was a composite job. "When a claimant's previous work involves a job that has significant elements of two or more occupations, that work consists of a composite job and must be evaluated according to the particular facts of each individual case." *Cabaniss v. Colvin*, No. 13 CV 4244, 2014 WL 7450435, at *12 (N.D. Ill. Dec. 30, 2014). If the claimant's prior position was a composite job, "the ALJ may not reference it when determining whether a claimant can perform his past job as it is generally performed." *Ray v. Berryhill*, 915 F.3d 486, 491 (7th Cir. 2019). Here, plaintiff does not identify any specific duties that she performed in her past work that are outside the scope of the Dictionary of Occupational Titles' definition of a benefits clerk II. *See* [18] 9-10. Plaintiff does assert that "a composite job seems like the most likely explanation" for the fact that "the heaviest she lifted was 10 pounds" and that she also "lifted and carried file boxe[s]" that "will average 35 pounds in weight" and "can be well over 50 pounds when full." [*Id.*] 9. One major flaw in this argument is that plaintiff never testified that she lifted boxes that weighed between 35 and 50 pounds. Plaintiff instead attempts to substantiate this point with a citation to a website that offers tips for storing office files. *See* [*id.*] 9 n.7. The Court will not rely on a random website to supplement plaintiff's case–especially where it contradicts plaintiff's own statements about the lifting and carrying requirements of her past work. *See* [*id.*] 280; *cf. Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *12-13 (N.D. Ill. Sept. 20, 2021) (rejecting plaintiff's argument that Court should consider website source explaining that central canal stenosis can cause never-root impingement or spinal cord compression where "plaintiff has not identified any objective medical evidence or opinion testimony that establishes the existence of nerve-root impingement or cord compression"). Another major flaw is that "performing work at different exertional levels does not implicate a composite job." *Baines v. Kijakazi*, Civil Action No. 4:21-cv-86-DMB-JMV, 2022 WL 2057735, at *4 (N.D. Miss. June 7, 2022).

B. **Recent Work Efforts**

Plaintiff next argues that the ALJ should have asked follow-up questions about her more recent attempts to work because her testimony about those attempts was confusing. [18] 10-12. Plaintiff contends that the ALJ's statement that plaintiff "confirmed that she last worked in data entry but feels unable to work due to stiffness in her fingers" was confusing because the ALJ did not "explain whether he is referring to her last job attempt or to her [past relevant work] as an enrollment specialist." [*Id.*] 10. In the Court's view, there was nothing confusing about the ALJ's statement. Both at the hearing and in the work history report, plaintiff referred to her most recent work attempt (which lasted only one day) as "data entry." *See* [13-1] 44

4

(testifying, in response to ALJ's questions when plaintiff had last worked and what work she was doing, "I was doing customer service, data entry. It lasted one day."); [*id.*] 274 (work history report characterizing plaintiff's most recent work as "cust svc / data entry"). Plaintiff continues by arguing that, if the ALJ had been referring to the data entry work, then "the ALJ almost seems to be acknowledging that stiffness in her fingers in a data entry job would of course be an issue" without explaining how she would be able to work as benefits specialist, which also required data entry duties. [*Id.*]. Again, plaintiff ignores the context of the ALJ's statement. At this point in the decision, the ALJ was simply recounting plaintiff's subjective symptom allegations. *See* [*id.*] 22-23. The ALJ then went on to find that those allegations were "not entirely consistent with the medical evidence and other evidence in the record," [*id.*] 23, but plaintiff has not challenged that ruling.

Plaintiff next faults the ALJ for not asking for more information about why her most recent work attempts were unsuccessful. Plaintiff again claims that her testimony about these issues was confusing, thereby obligating the ALJ to develop the issue in greater detail. But plaintiff has not shown–or even suggested–what additional information she could have provided on these topics. Indeed, plaintiff's argument on this score is so underdeveloped as to be forfeited. *See Cynthia B. v. Kijakazi*, No. 20 CV 428, 2022 WL 16781946, at *11 (N.D. Ill. Nov. 8, 2022). In any event, as the Court reads plaintiff's testimony, plaintiff clearly explained why she lost one of these jobs and testified that a second employer never told her why they did not hire her. *See* [13-1] 48-49. The ALJ did not create a significant omission in the record that prejudiced plaintiff when he did not pursue these issues further.

### C. Plaintiff's Medication

Plaintiff next complains that the ALJ did not explore whether her use of hydrochlorothiazide, a diuretic that plaintiff took for hypertension, caused a need for frequent bathroom breaks. [18] 12. The medical evidence of record refutes this claim. Most importantly, at multiple doctor's appointments between September 2017 and April 2021, plaintiff never complained of needing to urinate frequently–despite being on hydrochlorothiazide at those times. *See* [13-1] 373, 382-83, 398-99, 415, 441, 452, 737, 1280-81, 1568-69. Moreover, while plaintiff made one report, in February 2021, of having to urinate during the night, she also explained that her sleep difficulties were related to use of a CPAP machine, *see* [*id.*] 1544, and there is otherwise no indication in the treatment note that her doctor found a connection between taking hydrochlorothiazide and frequent urination. *See* [*id.*] 1540-51. Given this evidence, the Court rejects plaintiff's argument that the ALJ prejudiced plaintiff by failing to further explore this issue.

### D. Sitting, Fatigue, and Other Issues

Plaintiff argues that the ALJ created a significant omission in the record when, in questioning plaintiff about her ability to sit, he did not ask what type of chair she sits in during the day. [18] 12-13. Plaintiff also claims that the ALJ did not adequately explore how plaintiff's knee issues affect her ability to get up from a chair. [*Id.*]. These arguments amount to little more than nitpicking of the ALJ's handling of the hearing and provide no basis for a remand. On the former issue, plaintiff fails to explain why additional information about the type of chair she sits in at home has any effect on the issues in this case and has thus forfeited that issue. *See Cynthia B.*, 2022 WL 16781946, at *11. On the latter, plaintiff ignores multiple pieces of evidence in the record. For one thing, plaintiff testified that she could sit all day but sometimes experiences knee cramping. *See* [13-1] 51. For another, the ALJ considered a doctor's report that plaintiff used a rocking motion to get up from a chair during an exam. [*Id.*] 25, 1519. A subsequent treatment note indicated that plaintiff had no problem getting on and off an exam table and had only mild difficulty in squatting and rising. [*Id.*] 1524. The ALJ adequately explored these issues, and plaintiff has again failed to point to "specific, relevant facts that the ALJ did not consider." *Jozefyk*, 923 F.3d at 497.

Plaintiff also argues that the ALJ did not adequately explore her fatigue, but this argument cannot be squared with the record. The ALJ questioned plaintiff about her sleep apnea, how difficult she finds it to stay awake, and the treatment she had received for this condition. *See* [13-1] 45-46. He also asked plaintiff whether her doctors had "given you specific limitations, told you things you're not supposed to do because of your conditions." [*Id.*] 53. Plaintiff responded that one doctor told her that, "when I feel sleepy, to start drinking more tea, and she gave me some pills to take that keep me awake." [*Id.*] 54. In the decision denying benefits, the ALJ discussed plaintiff's sleep apnea and ensuing fatigue, observing that it was treated conservatively (primarily with a CPAP machine) and that there was no evidence to corroborate her claim that she falls asleep easily. [*Id.*] 22, 26. Plaintiff has not shown that the ALJ reversibly erred by failing to explore her sleep apnea even further. *See Jozefyk*, 923 F.3d at 497.

Plaintiff's final scattershot arguments about other areas that the ALJ should have explored are likewise meritless. She contends that the ALJ should have asked the vocational expert (VE) about employer tolerance for unscheduled breaks, but plaintiff's brief identifies no evidence suggesting that she needed unscheduled breaks–let alone that the ALJ erred by failing to include such a limitation in the RFC. *Cf. Desotelle v. Kijakazi*, Case No. 20-CV-1283, 2022 WL 409184, at *3 (E.D. Wis. Feb. 10, 2022) ("While Desotelle may have experienced chronic fatigue, she points to no evidence that this condition translates into a need for unscheduled breaks."). Plaintiff also insists that it was "odd" for the ALJ not to question her about her need to elevate her feet, given that ankle edema and leg elevation were "in the record." [18] 14. As

6

the Commissioner points out, the record contains a single reference to "minimal ankle edema," *see* [13-1] 1518, and the majority of the relevant treatment notes did not document edema, *see* [13-1] 1008, 1028, 1133, 1153, 1172, 1185, 1219, 1224, 1229. Similarly, plaintiff did not testify that she needed to elevate her legs, nor is there any evidence that one of her treaters advised her that it was medically necessary to do so. Lastly, plaintiff complains about the ALJ's examination of the VE pertaining to the step five job numbers, *see* [18] 15, but that issue is moot because the ALJ found that plaintiff was disabled at step four and did not reach step five.

### E. Plaintiff's Rights

Finally, plaintiff contends that the ALJ "did not scrupulously and conscientiously apprise [her] of her rights and options." [18] 14.

Plaintiff faults the ALJ for not advising her that she could seek an extension of time to obtain a set of x-rays that were not in the record. [*Id.*]. These arguments have no merit. At the end of the hearing, the ALJ advised plaintiff that "if there's more evidence that you want us to get, just let us know, and I'll have my staff get those." [13-1] 61. The ALJ also explained that plaintiff would have "the chance to review all of the evidence we've received," and comment on any evidence obtained post-hearing, before he issued his decision. [*Id.*] 42, 61. Finally, plaintiff testified at the hearing that these x-rays had not been taken. [*Id.*] 42 (plaintiff's testimony that she expected to have x-rays taken "in the next three to four weeks"). Thus, the ALJ cannot be faulted for not obtaining evidence that did not exist when the hearing concluded.[3]

Plaintiff then argues that the ALJ should have advised her that she needed to prove that she became disabled on or before the date last insured or that any post-DLI evidence needed to relate back to the alleged disability period. [*Id.*]. Plaintiff cites no legal authority for this argument, so it is forfeited. *See Cynthia B.*, 2022 WL 16781946, at *11. In any event, plaintiff ignores that the Notice of Hearing expressly advised her that the ALJ would need to decide whether she became disabled on or before the DLI. *See* [13-1] 191.

---

[3] Plaintiff's brief does not clarify whether these x-rays were ever taken. *See* [18] 14.

7

## Conclusion

Plaintiff's motion to reverse or remand the Commissioner's decision [18] is denied, the Commissioner's motion for summary judgment [25] is granted, and the denial of benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: July 21, 2025**